UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| IAN ERIC LONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 2:14-cv-00244-LJM-MJD |
| ) | |
| TERRY PIERCE, *et al.* ) | |
| Defendants. ) | |

## ORDER ON MOTION TO DISMISS

Plaintiff Ian Eric Long ("Long") alleges that Defendants Sheriff Terry Pierce ("Sheriff Pierce"), Jail Commander Dennis Conaway ("Conaway"), Kenneth Conolty ("Conolty"), Steven Dobson ("Dobson") and the Greene County Sheriff's Office (collectively, "Defendants") violated his constitutional rights when he was a pretrial detainee in the Greene County Jail from August 2012 to January 2013, and again from March 2013 to April 2013. Defendants have moved to dismiss the Third Amended Complaint contending that (1) Long's claims under 42 U.S.C. § 1983 against any Defendant added by the first Amended Complaint are barred by the two-year statute of limitations; (2) Long fails to state a claim against any individual Defendant; (3) the individual Defendants are entitled to qualified immunity; (4) no claim of an unconstitutional policy is stated in the Third Amended Complaint that would give rise to a claim against the Sheriff in his official capacity; and (5) Indiana's Religious Freedom Restoration Act ("RFRA") is not retroactive or provide any grounds for relief by Long.

Although Long concedes Defendants' argument regarding RFRA and has agreed to drop that claim, as to his remaining claims he argues that he has adequately met the

requirements for relation back to his original Complaint and that he has adequately stated facts supporting allegations against each Defendant, including the Sheriff in his official capacity.

On March 9, 2016, the Court held an oral argument on Defendants' Motion to Dismiss

The Court has considered all of the arguments presented by the parties and for the reasons stated herein, the Court concludes that Defendants' Motion to Dismiss must be **GRANTED in part and DENIED in part**.

### I. FACTUAL & PROCEDURAL BACKGROUND[1]

The facts as set forth in the Third Amended Complaint and any attachments are these:

Long was arrested and jailed on July 25, 2012. Dkt. 70 at 3, ¶ 18. His wife provided a letter that he had seizures as a result of a car accident, and other symptoms. Dkt. 70-1, Ex. 1. Upon arrival at the jail he had a seizure. Dkt. 70 at 3, ¶ 19. He was released on his own recognizance. *Id.* ¶ 21.

Long was arrested again on August 10, 2012, on charges of intimidation (a class C felony) and criminal mischief (class A misdemeanor), and was taken to the jail after being medically cleared at a hospital. *Id.* at 3-4, ¶¶ 22-25.

Long makes the following allegations against the named individual Defendants:

On August 11, 2012, Long had a seizure and medics were called. *Id.* at 4, ¶ 28. The medics reported that Long was non-responsive, but his vital signs were normal and he was breathing. Dkt. 70-4, Ex. 4. Jail officer Dobson called then-Sheriff Pierce who

---

[1] These facts are taken almost verbatim from Defendants' brief in support of their motion.

decided that Long would not be transported for further treatment. Dkt. 70 at 4, ¶¶ 30-32.[2] The medics advised that Long should be monitored for vomiting or problems breathing. *Id.* ¶ 33.

Long alleges that he had another seizure on August 12, 2012. Dkt. 70 at 5, ¶ 36. According to Long, medics were called and found that he had soiled his pants. *Id.* ¶¶ 37-38. He further alleges that the medics confirmed that he had a seizure, that he could not move his arms or legs, was unresponsive, and could not communicate. *Id.* ¶¶ 38-41.

However, the medics' report, which is an exhibit to the complaint, says nothing about a seizure or soiled clothes. Instead, it states that they were called to assist in moving Long because he claimed that he could not move his legs. Dkt. 70-5, Ex. 5. The medics found "positive reflex" in Long's legs, but he said he could not move his legs due to "PTSD" and "coping disorders". *Id.* Sheriff Pierce was called and declined to have Long transported to the hospital. *Id.* The medics advised the jail staff to monitor Long and seek medical attention for him. *Id.* Long alleges that he remained in a holding cell without a clean change of clothes until the morning of August 13, 2012, when state trooper Brad Stille ("Stille") provided him with drinking water and "a Kosher meal," got him a wheelchair, and helped him shower. Dkt. 70 at 5-6, ¶¶ 46-50. Long complained that he did not want to wear a gray/white striped uniform because it was reminiscent of Nazi concentration camp garb, so Stille got Long orange jail clothes. *Id.* at 6, ¶¶ 51-52.

---

[2] Terry Pierce was succeeded as sheriff by Michael Hasler on January 1, 2015. To the extent that this suit is against the Sheriff in his official capacity, Sheriff Hasler is automatically substituted as the defendant and may be named solely by office. Fed. R. Civ. P. 17(d), 25(d).

About two days later, Long was showered by jail officer Conolty. *Id.* ¶ 54. Long asked Conolty for an orange uniform based on his "Jewish heritage," but Conolty required plaintiff to wear a striped uniform. *Id.* ¶¶ 55-56.

Prior to November 6, 2012, Long asked jail commander Conaway that he be allowed to vote. Conaway stated that he would figure out how Long could vote, but never followed up by providing an absentee ballot or other accommodation for plaintiff to vote. *Id.* at 12, ¶¶ 123-27.

Long's cell did not have running water with which to clean himself. For the first month he was in the jail, he was provided with hand sanitizer, but later, jailer Dobson provided him with a cup of soapy water instead on the basis that Long was an alcoholic. Dkt. 70 at 7, ¶¶ 70-74.

Long makes several additional allegations of mistreatment without specifying that any of the named Defendants was personally involved:

- On August 25, 2012, he had a seizure and fell over in his wheelchair, so jailers removed the chair from his cell for two days. Dkt. 70 at 6, ¶¶ 59-61. This happened again on March 22, 2013, with an allegation that the chair was not returned to him until he was released on April 6, 2013. *Id.* at 6, ¶ 62, at 12 ¶ 29. When without a wheelchair, Long was unable to walk so he was required to drag himself across the cell to use the toilet. *Id.* at 7, ¶¶ 63-64.
- Long was given the opportunity to shower twice a week, leading to sores and rashes on his body. Dkt. 70 at 7-8, ¶ 75-76.
- Long was denied recreation or other non-isolation time out of his cell 24-hours per day except when he showered. Dkt. 70 at 8, ¶¶ 77-78.

- Long had "suicidal tendencies," but was provided with a razor and water to shave without supervision. *Id.* at 8, ¶¶ 79-82. Jailer Conolty told Long not to cut himself while shaving, and gestured by sliding his finger across his neck. *Id.* ¶ 82.

- Long's cell was not heated, and in October 2012 it became "particularly cold" resulting in his feet becoming discolored and the skin peeling. The jail nurse examined him the next day and noted that he needed further evaluation by a doctor. He was examined by a doctor at the hospital the next day, and the doctor noted "early frostbite" on his feet and toes. The doctor prescribed that Long keep his feet elevated and that he have a warm blanket and Vaseline to apply to his feet, but these were not provided. *Id.* at 8-9, ¶¶ 83-92.

- After his arrival in August 2012, Long refused to eat. He told trooper Stille that he was not eating because he was Jewish and must eat kosher meals. Stille requested a kosher meal for Long, but one was not provided. Jailers sometimes offered Long a "Kosher supplement" but they would improperly handle it with other non-Kosher food rendering it "no longer kosher." After 45 days, Long was forced to eat a non-Kosher meal on threat of being fed in a restraining chair with a feeding tube. *Id.* at 11, ¶¶ 110-120.

- Long was ridiculed about his Jewish heritage by "certain jailers" who made ethnic slurs and other derogatory comments. *Id.* at 12, ¶ 122.

- The state court in which Long's charges were pending found him to be incompetent to stand trial, and he was transferred to a state mental hospital on January 2, 2013. *Id.* at 9, ¶¶ 93-97. While there, Long was attacked by

5

> another patient who injured his face, which required reconstructive surgery on February 24, 2013.  *Id.* at 10, ¶¶ 100-02.
>
> - Long was returned to the Greene County Jail on March 7, 2013.  *Id.* at 10, ¶ 103.  Upon his return, he was denied: (a) medication from his surgery for one week; (b) a denture-soft, kKsher, high-fiber diet; (c) two cans of Kosher Ensure each day; (d) elevation of his head, and other discharge and release guidelines; and he developed an eye infection.  *Id.* at 10, ¶¶ 107-09.

Long was released on April 6, 2015.

On August 11, 2014, Long filed his first Complaint, *pro se*, naming the "Greene County Sheriff's Department" as the Defendant.  Dkt. No. 1.  Therein, while not naming all Defendants, Long mentioned Conaway and other jail staff at the facility during his time there.  *Id.* at 8.  Then-Sheriff Pierce was not named; however, Long alludes to the failure of the Sheriff to have the facilities to properly care for a person with Long's disabilities.  *Id.* at 3, 7.

Upon the Motion of Defendant's counsel, the Court dismissed the Complaint, but gave Long leave to file an amended complaint because the Greene County Sheriff's Department was not a proper party.  Dkt. No. 15.  On April 29, 2015, Long, *pro se*, filed an Amended Complaint naming, among other persons, Defendants then-Sheriff Pierce, Conaway, Conolty and Dobson.  Dkt. No. 17.  Therein, Long alleges several specific incidents related to his treatment by then-Sheriff Pierce, *id.* at 5; his treatment by Conaway or a precedent set by Conaway, *id.* at 6-7; as well as allegations that then-Sheriff Pierce's behavior and/or decisions with respect to treatment of Long "set the precedent of an unwritten policy of deliberate indifference," *id.* at 5, and that "unwritten

policies" were being implemented with respect to Long's treatment, *id.* at 8, and that detainee's right to votes was a "widespread practice so permanent and well-settled as to amount to a policy for inmates not be[ing] allowed to vote because they were considered 'convicts' even though inmates had only been charge, not convicted." *Id.* at 10. On September 30, 2015, Long filed a Second Amended Complaint. Dkt. No. 66.

On September 30, 2015, Long, by counsel, filed a Second Amended Complaint. Dkt. No. 66. Therein, Long specifically identifies then-Sheriff Pierce as a Defendant being sued in his personal and official capacities, as well as Conaway, Conolty and Dobson. *Id.* at 2-3. Therein, he makes specific allegations as to then-Sheriff Pierce, Dobson, Conolty, and Conawary. *Id.* at 4-8, 12.

On October 21, 2015, Long, by counsel, filed a Third Amended Complaint. Dkt. No. 70. The allegations therein are substantially similar to those of the Second Amended Complaint. *Compare* Dkt. No. 66 with Dkt. No. 70.

## II. DISCUSSION

### A. RELATION BACK

Defendants claim that the most generous limitations period expired in this case two years from the last date that Long was incarcerated, which would be April 6, 2015. Any specific against any individual Defendant would have expired two years from the date the incident occurred. Dkt. No. 74 at 6. Specifically, Defendants argue that because the original Complaint (filed August 11, 2014) named only the Greene County Sheriff's Department as a defendant and it was the only complaint filed within the most generous limitations period, claims against any Defendant not named therein are barred by the statute of limitations. *Id.* Further, even though the Sheriff's office was added as a

7

Defendant in September 2015, Defendants contend that any of those claims, if they are stated at all, are also time barred because they were added more than two years after Long was released. *Id.* at 7. Defendants also deny that Rule 15(c)(1) of the Federal Rules of Civil Procedure ("Rule 15(c)(1)") operates to relate the new allegations to the original Complaint because Long cannot show that the Defendants were not named because of a "mistake." *Id.* at 7-8. Citing various cases, Defendants assert that a "mistake" does not include the failure to discover the name of a particular Defendant and this is true, they continue, even if a Defendant had constructive notice of Long's claims. *Id.* at 8-9. Moreover, any delay, Defendants contend, was Long's fault for seeking additional time to respond to the initial Motion to Dismiss. Dkt. No. 82 at 4.

Long, relying on *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548 (7th Cir. 1996), argues that Long's subsequent complaints fairly "relate back" pursuant to rule 15(c)(1). Dkt. No. 79 at 1-4. Specifically, Long started this law suit *pro se* and once he was told by the Court that the Greene County Sheriff's Department was not a proper party, he realized his mistake. *Id.* at 3. Further, the same attorney has represented every Defendant named and served in this law suit since the filing of the initial Motion to Dismiss. *See* Dkt. Nos. 6, 44, 72. Moreover, Long asserts that Conaway was specifically named in the initial Complaint, actions of other jail staff were referenced, "jail officers" working at the Greene County Jail during the relevant time period were listed as "persons involved," and, by naming the "Greene County Sheriff's Department," its executive, the Sheriff, is adequately identifiable. *Id.* at 3-4. Therefore, Long contends, all Defendants knew or should have known, but for mistaken identity, that they should have been a party.

The Seventh Circuit has stated that there are two inquiries that a district court is permitted to make when deciding whether or not Rule 15(c)(1)(C) allows for an amended complaint to "relate back" to the date of the original one:

> first, whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant; and second, whether, even so, the delay in the in the plaintiff's discovery of his mistake impaired the new defendant's ability to defend himself.

*Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559-60 (7th Cir. 2011). Under this rubric, it is clear that but for Long's *pro se* status in mistaking the manner in which to identify a Sheriff in both his personal and official capacities, and for the same mistake in not naming the employees within the narrative of his allegations, the Defendants here knew or should have known that "but for that mistake" Long would have named them. Moreover, no matter how quickly Long could have filed a response to the original Motion to Dismiss, there is no guarantee that the Court could have acted in a manner that would have allowed Long more than the 5 calendar days he had between the issuance of the Court's order dismissing the original complaint and the latest date the statute of limitations ran. Furthermore, Defendants are hard pressed to argue that they are prejudiced for the delay because discovery started just recently and, as Long's counsel points out, they have had the same counsel since initiation of this law suit.

For these reasons, Defendants' Motion to Dismiss on Statute of Limitations grounds is **DENIED**.

### B. SUFFICIENCY OF ALLEGATIONS

Defendants contend that each and every one of Long's claims against them should be dismissed either because they are insufficiently plead or because they are qualifiedly

9

immune from suit. Long was a pretrial detainee at all times relevant to his Third Amended Complaint; therefore, Long's claims arise under the Fourteenth Amendment due process clause. *See Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013). The Court uses Eighth Amendment case law as a guide to evaluate his claims. *See id.* A pretrial detainee is "entitled to confinement under humane conditions which provide for [his] 'basic human needs.'" *Rice v. Correctional Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The first inquiry is whether or not "the adverse conditions complained of were 'sufficiently serious,' such that the acts or omission giving rise to these conditions deprived the prisoner of a 'minimal civilized measure of life's necessities.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). If the answer to that question is yes, the second inquiry is whether or not the prison official was deliberately indifferent to the adverse condition. *Id.* (citing *Farmer*, 511 U.S. at 834). Further, even if certain conditions of confinement are not serious enough to establish a constitutional violation alone, they "may violate the Constitution in combination when they have 'a mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd*, 711 F.3d at 843 (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

Here, Long alleges that he was denied access to running water, hand sanitizer (for all but a month of his confinement), adequate heat, recreation, adequate Kosher meals and a wheelchair. Dkt. No. 70 at ¶¶ 16, 49-53, 57-66, 77-78, 83-92, 110, 113-21. Long was provided no water at all for at least three days, from August 10 to August 13, 2012. *id.* ¶¶ 49-53. Further, his cell had no sink and he was only allowed to bathe twice a week. Long was unable to walk and, after his March 22, 2013, seizure, his wheelchair was

removed from his cell and he had to drag himself across the floor to use the toilet, but was not always successful in getting to the toilet on time. The only time that Long was taken out of his cell was to shower. In addition, because the heating was not adequate in Long's cell, he required medical treatment at a hospital for early frostbite. Moreover, Long alleges that because he was not provided Kosher meals as he requested, and he was eventually forced to eat non-Kosher food after being threatened with restraints, he lost 60 pounds during the five or six months he was incarcerated at the Greene County Jail. The lack of heat alone is sufficient evidence to support a conditions of confinement claim, but, in combination with the other allegations, the Third Amended Complaint supports a conclusion that Long was deprived of a sanitary living environment, adequate protection from cold, adequate recreation and adequate food. As to these claims, the Court concludes that Long has fairly stated a claim against the Sheriff in his official capacity as the person responsible for the operation, conditions, policies and customs at the Greene County Jail "for creating the conditions at the jail and permitting them to persist." *Budd*, 711 F.3d at 843. Accordingly, then-Sheriff Pierce's, in his official capacity, Motion to Dismiss with respect to that claim is **DENIED**. However, the Court agrees with Defendants that there is insufficient information from which to ascertain individual involvement; therefore, the claims regarding the above situations as to all Defendants in their individual capacities is **GRANTED**. To be clear, the claim that survives is Long's allegations that the Sheriff's policies and practices created inhumane conditions that were permitted to persist to Long's detriment.

Turning to Long's allegations of deliberate indifference to his serious medical needs, the Court agrees that the allegations against Dobson are insufficient to state a

11

claim. Even under the most liberal interpretation of the Third Amended Complaint, Dobson was following then-Sheriff Pierce's directive to not allow the medics to transport Long to the hospital; therefore, the requisite element of intentional behavior is lacking.

Then-Sheriff Pierce stands on different footing. Defendants allege that there is no evidence that the medics believed Long needed to be transported to the hospital; but the medic notes clearly indicated that a request to transport had been "denied." The allegation is that then-Sheriff Pierce specifically denied the transport on both occasions and, in fact, may have had some improper personal reasons for making such a decision. Defendants do not challenge the allegation that the seizures Long suffered were not a serious medical need; therefore, Long has stated a claim that then-Sheriff Pierce in his personal capacity was deliberately indifferent to his serious medical needs.

To the extent that then-Sheriff Pierce also seeks qualified immunity as to this claim, the Court cannot agree, at this stage of the litigation, that there was not a clearly established right. Therefore, this claim is dismissed as to Dobson, but proceeds as to then-Sheriff Pierce in his personal capacity.

Long also alleges that Conaway denied him of the right to vote. The Equal Protection Clause guarantees a pretrial detainee's right to vote. *See O'Brien v. Skinner*, 414 U.S. 524, 530 (1974). Here, Long has alleged that he asked Conaway to get him a ballot so that he could vote in the 2012 General Election, and that Conaway told Long he would figure out how to make it happen, but never did. Similar allegations have survived summary judgment. *See Post v. Du Page Cty.*, No. 91 C 447, 1993 WL 101823, at *8 (N.D. Ill. Apr. 1, 1993). The Court concludes that Long's allegations are enough to state a claim against Conaway. However, even though the right to vote is well-established, as

evidenced by *United States v. Olinger*, 759 F.2d1293, 1305 (7th Cir. 1985), Long points to no United States Supreme Court, Seventh Circuit, or other circuit court cases that have held that it is unconstitutional to fail to provide a means for detainees to vote in an election other than an absentee ballot, which the detainee may acquire for himself. *See Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009) (discussing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), which requires "that in the light of pre-existing law the unlawfulness must be apparent"). Conaway, then, is entitled to qualified immunity as to this claim. Therefore, Long's right to vote claim should be dismissed as to all Defendants.

Long also challenges being forced to wear a striped jail uniform reminiscent of Nazi concentration camp uniforms violated his First Amendment rights. In *Turner v. Safley*, 482 U.S. 89 (1987), the Supreme Court set out the following four-factor test to determine whether or not a jail regulation places an undue burden on an inmate's First Amendment rights: (1) whether there is a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it, *id.* at 89 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984); (2) "whether there are alternative means of exercising the right available to prison inmates," *id.* (citing *Jones v. N.C. Prisoners' Union*, 433 U.S. 119, 131 (1977)); (3) the impact a reasonable accommodation would have on staff, other inmates and on the allocation of prison resources generally, *id.*; and (4) the absence of ready alternatives, *id.* (citing *Block*, 468 U.S. at 587). Because this is a balancing test, the allegations of the Third Amended Complaint are enough to state a claim against Conolty, particularly because the facts alleged evidence how easy it was for Stille to provide an alternative orange uniform only a few days earlier, but further fact development on other elements may prove in Conolty's favor. In other words, with

the factors that the Court must balance on this claim, the Court agrees with Defendants that it is difficult to see how Conolty could have been on notice in August 2012, that his denial of Long's request for a striped uniform was unconstitutional. This claim falls into a "gray area between the clearly legal and the clearly illegal," *Gustafson v. Jones*, 117 F.3d 1015, 1021 (7th Cir. 1997); therefore, Conolty is entitled to qualified immunity, and the motion to dismiss on this claim should be **GRANTED**.

### III.  CONCLUSION

Defendants', Sheriff Terry Pierce, Jail Commander Dennis Conaway, Kenneth Conolty, Steven Dobson and the Greene County Sheriff's Office, Motion to Dismiss is **GRANTED in part and DENIED in part**. A personal capacity claim against then-Sheriff Terry Pierce and an official capacity claim against the Sheriff of Greene County are all that remain for litigation. No partial judgment shall issue at this time.

IT IS SO ORDERED this 10th day of March, 2016.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Alex Maurice Beeman
CIOBANU LAW PC
abeeman@ciobanulaw.com

Andrea Lynn Ciobanu
CIOBANU LAW, PC
aciobanu@ciobanulaw.com

Wayne E. Uhl
STEPHENSON MOROW & SEMLER
wuhl@stephlaw.com